United States District Court
Southern District of Texas
**ENTERED**
October 24, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARVIN WILLIAMS, ET AL., | § | |
| | § | |
| Plaintiffs. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:19–CV–02337 |
| | § | |
| AVON PRODUCTS, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Before me is Plaintiffs' Motion For Remand ("Motion to Remand"). *See* Dkt. 15. After reviewing the Motion to Remand, the response, and the applicable law, I **RECOMMEND** that the Motion to Remand be **DENIED**.

### BACKGROUND

In May 2019, Plaintiffs Marvin and Shirley Williams filed this lawsuit in the 152nd Judicial District Court of Harris County, Texas, alleging that Mr. Williams suffers from mesothelioma resulting from exposure to asbestos in the talic used in various talcum powder products. Specifically, Mr. Williams contends that he was exposed to asbestos through his mother's and sister's use of asbestos-containing talcum powder products on him and his siblings, through his own personal daily use, and through his wife's daily use on herself and their infant children. Plaintiffs brought this action against 14 companies who allegedly manufactured, designed, distributed, and/or sold the talcum powder products containing asbestos that caused Mr. Williams's mesothelioma. In the operative pleading,

Plaintiffs assert causes of action for conspiracy, negligence, gross negligence, aiding and abetting, and negligence per se.

In June 2019, Revlon Consumer Products Company ("Revlon") and Bristol-Myers Squibb Company ("BMS") timely removed this case to federal court on the basis of diversity jurisdiction.  In their notice of removal, Revlon and BMS recognized that the parties are not completely diverse.  Plaintiffs and two defendants, Randall's Food & Drugs LP and Randall's Food Markets, Inc. (collectively "Randall's"), are Texas citizens.[1] Although that would normally defeat diversity jurisdiction, Revlon and BMS ask me to disregard Randall's citizenship under the improper joinder doctrine, arguing that Plaintiffs have failed to state a viable claim against Randall's under Texas law.  In response, Plaintiffs claim that they have properly pled colorable claims against Randall's and there is a real possibility Plaintiffs will recover from Randall's in this lawsuit.

### THE IMPROPER JOINDER DOCTRINE

Motions to remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  A party may remove any civil action from state court to a federal district court that has original jurisdiction.  *See* 28 U.S.C. § 1441(a).  A district court may exercise removal jurisdiction over two types of cases: those that present a federal question and those in which there is diversity of citizenship.  *See* 28 U.S.C. §§ 1331–1332.  Under diversity jurisdiction, district courts have original jurisdiction over all

---

[1] The other 12 defendants are considered citizens of states other than Texas since their principal places of business and states of incorporation lie outside the Lone Star State.

civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a). Removal is only proper in such a case, however, if there is "complete diversity." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016). That means "if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Id*.

The improper joinder doctrine[2] provides a narrow exception to the rule that parties must be completely diverse for federal courts to exercise subject matter jurisdiction. *See McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005). "If a party has been improperly joined, . . . the lack of complete diversity will not prevent a defendant from removing a case to federal court." *Wolf v. Deutsche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2007-1*, 745 F. App'x 205, 207 (5th Cir. 2018). When a "plaintiff improperly joins a non-diverse defendant, . . . the court may disregard the citizenship of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant." *Flagg*, 819 F.3d at 136 (collecting cases). *See also Allen v. Walmart Stores, L.L.C.*, 907 F.3d 170, 183 (5th Cir. 2018) ("If a party is improperly joined, a court may disregard the party's citizenship for purposes of determining subject matter jurisdiction.").

To demonstrate improper joinder, the removing defendant must demonstrate either: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to

---

[2] The Fifth Circuit has "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,'" but "there is no substantive difference between the two terms." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004).

establish a cause of action against the non-diverse party in state court." *Smallwood*, 385 F.3d at 573 (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)).  Actual fraud has not been asserted here.  At issue, therefore, is the second situation.  "To establish that a non-diverse defendant has been [improperly] joined to defeat diversity jurisdiction, the removing party must prove . . . that there is *absolutely no possibility* that the plaintiff will be able to establish a cause of action against the [in-state] defendant." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999) (emphasis added).  *See also Smallwood*, 385 F.3d at 573 ("[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state [or nondiverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state [or nondiverse] defendant.").

To determine whether a defendant is improperly joined under the second prong, I must evaluate whether there is a claim against that defendant using the federal pleading standards instead of the more lenient "fair notice standard" utilized by Texas state courts. *See Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018) ("[P]leadings must be reviewed under the federal pleading standard because the question of improper joinder '[a]t bottom . . . is solely about determining the federal court's jurisdiction.'") (citation omitted).  Thus, to determine whether the improper joinder doctrine applies, a trial "court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood,* 385 F.3d at 573.  "Ordinarily, if a plaintiff can survive a Rule

4

12(b)(6) challenge, there is no improper joinder." *Id.*  To pass muster under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

In deciding whether improper joinder has been established, a district court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff [and remand]."  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). The removing party bears the heavy burden of proving improper joinder.  *See Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011).

### CHAPTER 82 OF THE TEXAS CIVIL PRACTICE AND REMEDIES CODE

Generally speaking, Chapter 82 of the Texas Civil Practice and Remedies Code allows actions "against a manufacturer or seller for recovery of damages arising out of personal injury, death, or property damage allegedly caused by a defective product whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories."  TEX. CIV. PRAC. & REM. CODE § 82.001(2).

In 2003, the Texas Legislature added Section 82.003, limiting products liability actions against nonmanufacturing sellers.  Section 82.003 established a general rule that a nonmanufacturing seller is not liable for harm caused by a defective product.  This limitation was enacted to protect "innocent sellers" from the costs of products liability

litigation they are drawn into solely because of the vicarious nature of that liability. *See Manchester Tank & Equip. Co. v. Engineered Controls Int'l, Inc.*, 311 S.W.3d 573, 575 (Tex. App.—Waco 2009, pet. denied) ("Chapter 82 of the Texas Civil Practice and Remedies Code was added by the legislature to protect innocent sellers from products liability suits unless they had significantly and intentionally participated in the design or production of the product.").

Section 82.003(a) contains seven narrow exceptions to the general rule that a nonmanufacturing seller is not liable for harm caused by a defective product. The only exception at issue in this case is the "actual knowledge" exception set out in § 82.003(a)(6), which provides that:

> (a) A seller that did not manufacture a product is not liable for harm caused to the claimant by that product unless the claimant proves:
>
>     . . . .
>
> (6) that:
>
>> (A) the seller actually knew of a defect to the product at the time the seller supplied the product; and
>>
>> (B) the claimant's harm resulted from the defect[.]

TEX. CIV. PRAC. & REM. CODE § 82.003(a)(6).

## ANALYSIS

To resolve the improper joinder issue in this case, I must answer one basic question: Have Plaintiffs sufficiently alleged a possible basis of recovery against Randall's under Texas law? If the answer is yes, the improper joinder doctrine is inapplicable and I must

remand the case to state court.  If the answer is no, Randall's has been improperly joined, this case has been properly removed, and it should remain here in federal court.

In arguing that the improper joinder doctrine requires this case to be remanded to state court, Revlon and BMS claim that Plaintiffs "have not plead a reasonable basis for recovery on any single cause of action against Texas-based Randall's because their allegations fail to meet the requirements needed to invoke the exceptions under TEX. CIV. PRAC. & REM. CODE § 82.003(a) in order to hold a nonmanufacturer liable for products liability."   Dkt. 17 at 2.   As noted above, Section 82.003(a)(6) provides that a nonmanufacturing seller can be liable for a products liability action if the seller "actually knew of a defect to the product" and "the claimant's harm resulted from the defect." Revlon and BMS stress that Plaintiffs never provide any facts in the state court petition that can reasonably support the allegation that Randall's actually knew there was a defect in the talcum powder they sold.  Instead, the operative pleading simply makes broad allegations that Randall's knew or should have known of the defective product.  The allegations against Randall's set forth in the state court petition include the following:

- "The injuries, illnesses and disabilities of Plaintiff MARVIN WILLIAMS are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, designed, sold and/or otherwise put into the stream of commerce Defendants' products which the ***Defendants knew, or in the exercise of ordinary care should have known,*** were deleterious and highly harmful to Plaintiffs health and well-being."  Dkt. 1-2 at 11 (emphasis added).

- Randall's ***"knew or should have known of the defects*** of the asbestos containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades they sold and/or supplied, and are strictly liable and negligent for failing to warn users and

bystanders of potential health hazards from the use of said products." *Id.* at 13 (emphasis added).

- Randall's ***"knew or should have known*** that the asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades which they sold and supplied were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence." *Id.* (emphasis added).

- "The actions of all Defendants [including Randall's] aided, abetted, encouraged, induced or directed the negligent and/or intentional actions of each and every other Defendant. Each of the Defendants ***knew or should have known*** that its individual actions would combine to cause the injuries, illnesses and disabilities of Plaintiff MARVIN WILLIAMS." *Id.* at 17 (emphasis added).

These allegations fail to satisfy the Rule 12(b)(6) pleading standard to adequately state a claim against a nonmanufacturer under Section 82.003(a)(6). Section "82.003(a)(6)'s 'actual knowledge' requirement means just what it says, and cannot be satisfied with a showing of negligent oversight, constructive knowledge, or similar allegations that a seller could or 'should have known of a defect in a product.'" *Ray v. FCA US LLC*, No. 2:17-CV-86, 2017 WL 3033425, at *4 (S.D. Tex. July 18, 2017) (quoting *Garcia v. Ford Motor Co.*, No. 1:12-CV-181, 2013 WL 12137090, at *3 (S.D. Tex. May 10, 2013)). This is not an isolated view. Federal courts addressing Chapter 82's actual knowledge exception have uniformly held that a plaintiff who alleges that a nonmanufacturing seller should-have-known of a product defect has failed to adequately state a viable claim under Rule 12(b)(6). *See Patlan v. Michelin N. Am., Inc.*, No. 5:19-CV-262-XR, 2019 WL 2267046, at *3 (W.D. Tex. May 28, 2019) ("Under § 82.003(a), liability cannot be based on an allegation that a seller should have known of a defect in a

product."); *Mix v. Target Corp.*, 759 F. Supp. 2d 876, 879 (S.D. Tex. 2010) ("It is particularly instructive that, in drafting Chapter 82, the Texas Legislature 'used "knew," not "should have known"' of a defect." (quoting *Lott v. Dutchmen Mfg., Inc.*, 422 F. Supp. 2d 750, 754 (E.D. Tex. 2006))); *Rubin v. Daimlerchrysler Corp.*, No. Civ.A. H044021, 2005 WL 1214605, at *6 (S.D. Tex. May 20, 2005) ("Under [Section 82.003(a)(6)], . . . liability cannot be based on an allegation that a seller *should have known* of a defect in a product."); *Reynolds v. Ford Motors Co.*, No. Civ.A.5:04CV085-C, 2004 WL 2870079, at *3 (N.D. Tex. Dec. 13, 2004) ("The language of section 82.003 clearly requires actual knowledge of the defect on the part of the seller" and "makes no reference to what a seller should have known or foreseen.").  Similarly, Texas courts have also held that it is not enough for a plaintiff seeking to benefit from Section 82.003(a)(6) to merely demonstrate that the seller should have been aware of the product defect.  *See, e.g., Transcon. Ins. Co. v. Briggs Equip. Tr.*, 321 S.W. 3d 685, 702 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (holding testimony that the defendant should have known of the product defect "through the prudent application of reasonable and competent care" was insufficient to demonstrate actual knowledge).

Although Plaintiffs' state court petition does, in several places, make general allegations that Randall's supposedly knew of talcum powder's defective condition, there are no substantive facts pled to support these allegations.  For example, Plaintiffs casually assert that Randall's was "negligent . . . in failing to recall and/or remove Defendants' Products from the stream of commerce despite knowledge of the unsafe and dangerous nature of Defendants' Products."  Dkt. 1-2 at 11–12.  Plaintiffs also generally allege that:

> Defendants [including Randall's] and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive Plaintiff MARVIN WILLIAMS and his family members of the opportunity of informed free choice as to whether to use Defendants' Products or to expose himself to said dangers.  Defendants committed the above-described wrongs by willfully mispresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' Products.

*Id.* at 14.  These bare-boned allegations are insufficient to satisfy Rule 12(b)(6).  "[A]ny general allegations of actual knowledge or bare recitals of elements without specific facts are insufficient to reasonably establish [Randall's] actual knowledge as required by § 82.003."  *Garnett v. Remington Arms Co.*, LLC, No. W-17-CV-00263-RP, 2018 WL 4688813, at *4 (W.D. Tex. June 14, 2018).  It is incumbent on Plaintiffs to plead facts to support their claims for affirmative relief.  Simply stating, without any additional factual basis whatsoever, that Randall's was aware of a product defect is not enough.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Because there are no facts pled which raise the inference that Randall's was aware of the defective product, I find that Randall's has been improperly joined to defeat diversity jurisdiction.  *See Pizana v. Jerry's Auto Sales*, No. B-19-55, 2019 WL 4280016, at *5–6 (S.D. Tex. July 23, 2019) (finding improper joinder and denying a motion to remand because plaintiff failed to allege that the in-state seller had actual knowledge of the product defect).  Remand, therefore, is inappropriate.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that the Motion to Remand be **DENIED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED at Houston, Texas, this 24th day of October, 2019.

_____

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE