# EXHIBIT A

~~CAUSE NO. ____________________~~

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

~~**MARVIN WILLIAMS** and~~ **SHIRLEY WILLIAMS**, Individually and as Anticipated Personal Representative of the Estate of **MARVIN WILLIAMS, SR.,** Deceased, and On Behalf of All Heirs, **PAMELA HALL, CHARISSE WHEELER, TERRELL CHAMBERS** and **MARVIN WILLIAMS, JR.,** Individually,

*Plaintiffs,*

vs.

**AVON PRODUCTS, INC.**;
~~**BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);~~
**BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.);
**BRISTOL-MYERS SQUIBB COMPANY** (sued individually and as successor-in-interest to CHARLES OF THE RITZ);
~~**COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY);~~
~~**CYPRUS MINES CORPORATION**;~~
~~**CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY);~~
**JOHNSON & JOHNSON**;
**JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of JOHNSON &

~~IN THE DISTRICT COURT~~

~~_____ JUDICIAL DISTRICT~~

**CIVIL ACTION NO. 4:19-cv-02337**

~~HARRIS COUNTY, TEXAS~~

UNDERSCORED LANGUAGE REPRESENTS ADDITIONS TO THE ORIGINAL COMPLAINT

STRIKETHROUGH LANGUAGE REPRESENTS DELETIONS FROM THE ORIGINAL COMPLAINT

JOHNSON;
**REVLON CONSUMER PRODUCTS CORPORATION**; and
~~**RANDALL'S FOOD & DRUGS LP**;~~
~~**RANDALL'S FOOD MARKETS, INC.**;~~
**WHITTAKER CLARK & DANIELS, INC.**,
~~**YVES SAINT LAURENT AMERICA, INC.**, a subsidiary of KERING HOLLAND NV;~~

*Defendants.*

**PLAINTIFFS' ~~ORIGINAL~~ FIRST AMENDED ~~PETITION~~ COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT**:

COME NOW Plaintiffs, ~~MARVIN WILLIAMS and~~ SHIRLEY WILLIAMS, Individually and As Anticipated Personal Representative of the Estate of MARVIN WILLIAMS, SR., Deceased, and On Behalf of All Heirs, PAMELA HALL, CHARISSE WHEELER, TERRELL CHAMBERS, and MARVIN WILLIAMS, JR., Individually, who complain of the various Defendants listed below and for cause of action would show the Court and Jury as follows:

## I. PARTIES

~~1. Pursuant to T.R.C.P. 190.1, Discovery will be conducted under Level 3 (T.R.C.P. 190.4). Certain Defendants named herein reside in this County, maintain offices in this County and/or have their principal place of business in this County, and/or all or a substantial part of the acts or omissions that form the basis of this lawsuit occurred in this County, therefore, venue properly lies in this County. Certain acts or omissions, which were a proximate or producing cause of Plaintiff MARVIN WILLIAMS' asbestos-related injuries, occurred in Texas.~~

~~2. The damages Plaintiffs seek are within the jurisdictional limits of this Court. As required by Texas Rule of Civil Procedure 47(c), Plaintiffs state that they seek monetary relief over~~

~~$1,000,000.00 for the injuries alleged in this Petition.  Plaintiffs further seek any relief in equity to which they are justly entitled.~~

1.      Prior to his death, MARVIN WILLIAMS, SR., was a resident of Harris County, Texas, and a citizen of the State of Texas, and was diagnosed with mesothelioma, an asbestos-related cancer that was the cause of his death.

2.      Plaintiff SHIRLEY WILLIAMS, Individually and as Anticipated Personal Representative of the Estate of Marvin Williams, Sr., and On Behalf of All Heirs, is an individual residing in Harris County, Texas, and a citizen of the State of Texas.

3.      Plaintiff TERRELL CHAMBERS is an individual residing in Miami-Dade County, Florida, and a citizen of the State of Florida.

4.      Plaintiff CHARISSE WHEELER is an individualy residing in Camden County, New Jersey, and a citizen of the State of New Jersey.

5.      Plaintiff MARVIN WILLIAMS, JR., is an individual residing in Denton County, Texas, and a citizen of the State of Texas.

6.      Plaintiff PAMELA HALL is an individual residing in Fort Bend County, Texas, and a citizen of the State of Texas.

~~3.      Plaintiffs MARVIN WILLIAMS and SHIRLEY WILLIAMS reside at 1510 Green Leaf Oaks Drive, Sugar Land, Texas 77479.~~

7.      Defendant **AVON PRODUCTS, INC.** has been ~~may be~~ served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a manufacturer of asbestos-containing Avon Rare Emeralds talcum powder and Avon Topaze talcum powder.

~~8.      Although Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually~~

~~and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its registered agent in Delaware, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801. Defendant **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) may be served through the Secretary of State for the State of Texas.This Defendant is being sued as a supplier of asbestos-containing talc.~~

8. Although Defendant **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation ~~may be~~ has been served with process through its registered agent in New Jersey, Corporation Trust Company, Mountain View Office Park, 820 Bear Tavern Road, West Trenton, NJ 08628. Defendant **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) ~~may be~~ has been served through the Secretary of State for the State of Texas.This Defendant is being sued as a supplier of asbestos-containing talc.

9. Defendant **BRISTOL-MYERS SQUIBB COMPANY** (sued individually and as successor-in-interest to CHARLES OF THE RITZ) ~~may be~~ has been served through its registered

agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a manufacturer of asbestos-containing Jean Naté talcum powder.

~~9. Defendant **COLGATE-PALMOLIVE COMPANY** (sued individually and as successor-in-interest to THE MENNEN COMPANY) may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a manufacturer of asbestos-containing Mennen Body talcum powder.~~

~~10. Although Defendant **CYPRUS MINES CORPORATION** has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its registered agent in Delaware, Registered Agent Solutions, Inc., 9 E. Loockerman Street, Suite 311, Dover, DE 19901. Defendant **CYPRUS MINES CORPORATION** may be served through the Secretary of State for the State of Texas.This Defendant is being sued as a supplier of asbestos-containing talc.~~

~~11. Although Defendant **CYPRUS AMAX MINERALS COMPANY** (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation may be served with process through its registered agent in Delaware, Registered Agent Solutions, Inc., 9 E. Loockerman Street, Suite 311, Dover, DE 19901. Defendant **CYPRUS AMAX MINERALS COMPANY** (sued individually,~~

~~doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) may be served through the Secretary of State for the State of Texas.This Defendant is being sued as a supplier of asbestos-containing talc.~~

10. Although Defendant **JOHNSON & JOHNSON** has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation ~~may be~~ has been served with process through at its principal place of business in New Jersey, One Johnson & Johnson Plaza, New Brunswick, NJ 08933. Defendant **JOHNSON & JOHNSON** ~~may be~~ has been served through the Secretary of State for the State of Texas.This Defendant is being sued as a manufacturer of asbestos-containing Johnson's Baby Powder.

11. Defendant **JOHNSON & JOHNSON CONSUMER INC.**, a subsidiary of JOHNSON & JOHNSON, ~~may be~~ has been served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a manufacturer of asbestos-containing Johnson's Baby Powder.

12. Although Defendant **REVLON CONSUMER PRODUCTS CORPORATION** has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation ~~may be~~ has been served with process through its registered agent in Delaware, Corporate Creations Network Inc., 3411 Silverside Road, Tatnall Building, Suite 104, Wilmington, DE 19810. Defendant **REVLON CONSUMER PRODUCTS CORPORATION** ~~may be~~ has been served through the Secretary of State for the State of Texas.This Defendant is being sued as a manufacturer of asbestos-containing Jean Naté talcum powder.

~~13. Defendant **RANDALL'S FOOD & DRUGS LP** may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a supplier of asbestos-containing talcum powder products.~~

~~14. Defendant **RANDALL'S FOOD MARKETS, INC.** may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a supplier of asbestos-containing talcum powder products. This Defendant maintains its principal place of business in Houston, Harris County, Texas.~~

13. Although Defendant **WHITTAKER CLARK & DANIELS, INC.** has at all times relevant to this litigation conducted business in this State and is required to maintain a registered agent for service of process, it has not designated such an agent. Therefore, said corporation ~~may be~~ has been served with process through its registered agent in New Jersey, Joe Cobuzio c/o Tompkins, McGuire, Wacenfeld, et al., 3 Becker Farm Road, 4th Floor, Roseland, NJ 07068. Defendant **WHITTAKER CLARK & DANIELS, INC.** ~~may be~~ has been served through the Secretary of State for the State of Texas. This Defendant is being sued as a supplier of asbestos-containing talc.

~~15. Defendant **YVES SAINT LAURENT AMERICA, INC.**, a subsidiary of KERING HOLLAND NV may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3140. This Defendant is being sued as a manufacturer of asbestos-containing Jean Naté talcum powder.~~

~~This action is brought and these allegations are made pursuant to Tex. Civ. Prac. & Rem. Code § 71.031.~~

## II. JURISDICTION

14. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

15. This Court has jurisdiction over the Defendants because, at all times material hereto, they transacted business in the State of Texas and the wrongs complained of arose in the State of Texas.

## III. VENUE

16. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the Plaintiffs' claims occurred in this district, and because Defendants transacted business in this district.

## IV. FACTUAL SUMMARY

17. ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., was wrongfully exposed to and inhaled, ingested, or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

**a.** Plaintiffs allege that ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., experienced exposure to asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades through his Mother's and Sister's daily use of Johnson's Baby Powder on ~~Plaintiff~~ Decedent and his siblings from approximately the late 1940's to 1967, at his personal residences in Port Arthur, Texas, and Philadelphia, Pennsylvania. ~~Plaintiff~~ Decedent was also exposed to asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or

other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades through his personal, daily use of Mennen Body talcum powder while serving in the United States Air Force at Myrtle Beach Air Force Base in Myrtle Beach, South Carolina, Shemya Air Force Base in Shemya, Alaska, and Dover Air Force Base in Dover, Delaware, from approximately 1965 to 1969. ~~Plaintiff~~ Decedent was also exposed to asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades through his Wife's daily use of Johnson's Baby Powder on their infant children from approximately 1969 to 1988 while residing in Philadelphia, Pennsylvania, and Missouri, Texas, through his Wife's daily use of Avon Topaze talcum powder and Avon Rare Emeralds talcum powder from approximately 1964 to 1976 while residing in Philadelphia, Pennsylvania, and Missouri, Texas, and through his Wife's daily use of Jean Naté talcum powder from approximately 1976 to 2012 while residing in Missouri, Texas and Sugar Land, Texas. During these time periods, ~~Plaintiff~~ Decedent was also exposed to asbestos-containing talc supplied by ~~Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.),~~ Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Cyprus Mines Corporation, Cyprus Amax Minerals

Company (sued individually, doing business as, and as successor to American Talc Company, Metropolitan Talc Co. Inc. and Charles Mathieu Inc. and Sierra Talc Company and United Talc Company), and Whittaker Clark & Daniels, Inc.~~,~~. ~~and asbestos-containing talcum powder products supplied by Randall's Food & Drugs LP and Randall's Food Markets, Inc.~~ During ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s Mother's and Sister's daily use of asbestos-containing Johnson's Baby Powder on ~~Plaintiff~~ Decedent and his siblings, during ~~Plaintiff's~~ Decedent's personal daily use of Mennen Body talcum powder, during ~~Plaintiff's~~ Decedent's Wife's daily use of Johnson's Baby Powder on their infant children, and during ~~Plaintiff's~~ Decedent's Wife's daily use of Avon Topaze talcum powder, Avon Rare Emeralds talcum powder, and Jean Naté talcum powder, dangerously high levels of asbestos fibers were released into the air and were frequently inhaled and ingested by ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.

## V.   ALLEGATIONS AGAINST ALL DEFENDANTS

18.     Plaintiffs allege that ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., was exposed to asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades through ~~Plaintiff's~~ Decedent's Mother's and Sister's use of asbestos-containing talcum powder products on ~~Plaintiff~~ Decedent and his siblings, ~~through Plaintiff's~~ Decedent's personal daily use, through ~~Plaintiff's~~ Decedent's Wife's use on their infant children, and through ~~Plaintiff's~~ Decedent's Wife's daily use of asbestos-containing talcum powder products.  Each Defendant corporation or its predecessor-in-interest is, or at times material hereto, has been engaged

in the mining, processing and/or manufacturing, sale and distribution of asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos fiber of various kinds and grades (hereinafter collectively referred to as "Defendants' Products").  ~~Plaintiff~~Decedent MARVIN WILLIAMS, SR., was exposed, on numerous occasions, to Defendants' Products which were produced and/or sold by Defendants and in so doing, inhaled great quantities of asbestos fibers. Further, Plaintiffs allege, as more specifically set out below, that ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., has suffered injuries, illnesses, and disabilities proximately caused by his exposure to Defendants' Products which were designed, manufactured and sold by Defendants.  In that each exposure to Defendants' Products caused or contributed to ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s injuries, illnesses and disabilities, Plaintiffs say that the doctrine of joint and several liabilities should be extended to apply to each Defendant herein.

19. ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., was exposed to Defendants' Products that were manufactured, designed and/or distributed by the Defendants and/or their predecessors-in-interest through ~~Plaintiff's~~ Decedent's Mother's and Sister's use of asbestos-containing talcum powder products on ~~Plaintiff~~ Decedent and his siblings, through ~~Plaintiff's~~ Decedent's personal daily use, through ~~Plaintiff's~~ Decedent's Wife's use on their infant children, and through ~~Plaintiff's~~ Decedent's Wife's daily use of asbestos-containing talcum powder products.  Plaintiffs would show that the defective design and condition of Defendants' Products rendered Defendants' Products unreasonably dangerous, and that Defendants' Products were in this defective condition at the time they were designed by and/or left the hands of Defendants.  Plaintiffs would show that Defendants' Products were defective in the manner in which they were marketed for their failure to contain or include adequate warnings regarding potential asbestos health hazards associated with the use of or

the exposure to Defendants' Products, defectively designed because they were more dangerous than would be contemplated by an ordinary user, the risks of Defendants' Products outweighed their benefits, and defectively manufactured as they failed to comply with Defendants' own specifications. Plaintiffs would show that this market defect rendered Defendants' Products unreasonably dangerous at the time they were designed or left the hands of the Defendants. Plaintiffs would show that Defendants are liable in product liability including, but not limited to, strict product liability for the above-described defects.

20. The Defendants are or were engaged in the business of selling, manufacturing, producing, designing and/or otherwise putting into the stream of commerce Defendants' Products, and those Products, without substantial change in the condition in which they were sold, manufactured, produced, designed and/or otherwise put into the stream of commerce, were a proximate and/or producing cause of the injuries, illnesses and disabilities of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.

21. Defendants knew that Defendants' Products would be used without inspection for defects and, by placing them on the market, represented that they would safely do the job for which they were intended, which must necessarily include being safe for personal use, handling and/or manipulation.

22. ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., and his family members were unaware of the hazards and defects in Defendants' Products which made them unsafe for purposes of personal use, handling, and/or manipulation.

23. During the periods that ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., was exposed to Defendants' Products which were manufactured and sold by various Defendants, those Products were being utilized in a manner which was intended by Defendants.

24. In the event that Plaintiffs are unable to identify each injurious exposure to Defendants' Products, Plaintiffs would show the Court that the Defendants named herein represent and/or represented a substantial share of the relevant market of Defendants' Products at all times material to this cause of action. Consequently, each Defendant should be held jointly and severally liable under the doctrines of enterprise liability, market-share liability, concert of action and alternative liability, among others.

25. The injuries, illnesses, ~~and~~ disabilities and death of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., are a direct and proximate result of the negligence of each Defendant and/or its predecessor-in-interest in that said entities produced, designed, sold and/or otherwise put into the stream of commerce Defendants' Products which the Defendants knew, or in the exercise of ordinary care should have known, were deleterious and highly harmful to ~~Plaintiff's~~ Decedent's health and well-being. Certain Defendants created hazardous and deadly conditions to which ~~Plaintiff~~ Decedent was exposed and which caused ~~Plaintiff~~ Decedent to be exposed to a large amount of asbestos fibers. The Defendants were negligent in one, some and/or all of the following respects, among others, same being the proximate cause of ~~Plaintiff's~~ Decedent's injuries, illnesses, ~~and~~ disabilities and death:

(a) in failing to timely and adequately warn ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., his Mother, his Sister, his Wife, and others of the dangerous characteristics and serious health hazards associated with the personal use of and exposure to Defendants' Products;

(b) in failing to provide ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., his Mother, his Sister, his Wife, and others with information as to what would be reasonably safe and sufficient wearing apparel and proper protective

equipment, if in truth there were any, to protect ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., and others from being harmed and disabled by exposure to Defendants' Products;

(c) in failing to place timely and adequate warnings on the containers of Defendants' Products or on Defendants' Products themselves to warn of the dangers to health of coming into contact with Defendants' Products;

(d) in failing to take reasonable precautions or exercise reasonable care to publish, adopt and enforce a safety plan and/or safe method of handling and using Defendants' Products in a safe manner;

(e) in failing to develop and utilize a substitute material or design to eliminate asbestos fibers in Defendants' Products;

(f) in failing to properly design and manufacture Defendants' Products for safe use under conditions of use that were reasonably anticipated;

(g) in failing to properly test Defendants' Products before they were released for consumer use; and

(h) in failing to recall and/or remove Defendants' Products from the stream of commerce despite knowledge of the unsafe and dangerous nature of Defendants' Products.

## VI. ALLEGATIONS AGAINST SUPPLIER DEFENDANTS

26. All of the allegations contained in the previous paragraphs are realleged herein.

27. For all pertinent times, ~~BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-~~

~~interest to WHITTAKER CLARK & DANIELS, INC.),~~ BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), ~~CYPRUS MINES CORPORATION, CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to AMERICAN TALC COMPANY, METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY), RANDALL'S FOOD & DRUGS LP, RANDALL'S FOOD MARKETS, INC.,~~ and WHITTAKER CLARK & DANIELS, INC. (hereinafter collectively referred to as "Supplier Defendants") individually sold, distributed, and supplied asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades through the asbestos-containing talcum powder products that ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., came in contact with and inhaled during his personal use, during his Mother's and Sister's use on ~~Plaintiff~~ Decedent and his siblings, and during his Wife's personal use and use on their infant children, thereby causing his injuries, illnesses, ~~and~~ disabilities and death.

28. Supplier Defendants as manufacturers, miners, shippers, distributors, and suppliers of asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades to various locations owned and/or operated by asbestos product manufacturers are liable to Plaintiffs for their failure to warn of the health hazards of exposure to asbestos and failure to design and package their products so as to adequately protect and warn users and bystanders of the dangers of exposure to asbestos.

29. Further, Supplier Defendants are liable to ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., as professional vendors of asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades, and as such, because of the Defendants' size, volume

of business and merchandising practices, knew or should have known of the defects of the asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades they sold and/or supplied, and are strictly liable and negligent for failing to warn users and bystanders of potential health hazards from the use of said products.

30. Further, Supplier Defendants made misrepresentations regarding the safety of asbestos to the asbestos-product manufacturers, thereby fraudulently inducing other sophisticated users to use Supplier Defendants' asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades instead of other types. As such, Supplier Defendants are liable to ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., for his suffering, ~~and~~ injuries and death from a disease caused by exposure to Supplier Defendants' asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades because Supplier Defendants' fraudulent misrepresentations were detrimentally relied upon (1) by asbestos-product manufacturers incorporating Supplier Defendants' asbestos-containing talc and/or raw asbestos fiber of various kinds and grades into their finished products and (2) by ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., who was exposed to the asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades.

31. Finally, Supplier Defendants are liable to Plaintiffs because they knew or should have known that the asbestos-containing talc, and/or asbestos-containing products, and/or raw asbestos fiber of various kinds and grades which they sold and supplied were unreasonably dangerous in normal use, and their failure to communicate this information constitutes negligence. This negligence was the cause of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.,'s injuries including, but not limited to, asbestos-related mesothelioma and other ill health effects.

## VII.  CONSPIRACY ALLEGATIONS AGAINST ALL DEFENDANTS

32.     All of the allegations contained in the previous paragraphs are realleged herein.

33.     Plaintiffs further allege that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves and with other entities to cause ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s illnesses, injuries, ~~and~~ disabilities and death by exposing him to harmful and dangerous Defendants' Products.  Defendants and other entities further knowingly agreed, contrived, combined, confederated and conspired to deprive ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., and his family members of the opportunity of informed free choice as to whether to use Defendants' Products or to expose himself to said dangers.  Defendants committed the above-described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' Products.

34.     In furtherance of said conspiracies, Defendants performed the following overt acts:

(a)     for many decades, Defendants individually, jointly, and in conspiracy with each other and other entities have been in possession of medical and scientific data, literature and test reports, which clearly indicated that the inhalation of asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' Products was unreasonably dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

(b)     despite the medical and scientific data, literature and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other and other entities fraudulently, willfully, and maliciously:

(1) withheld, concealed, and suppressed said medical and scientific data, literature and test reports regarding the risks of cancer, mesothelioma and other illnesses and diseases from ~~Plaintiff~~ <u>Decedent</u> MARVIN WILLIAMS, <u>SR.</u> and his family members who were was using and being exposed to Defendants' Products;

(2) caused to be released, published and disseminated medical and scientific data, literature and test reports containing information and statements regarding the risks of cancer, mesothelioma and other illnesses and diseases, which Defendants knew were incorrect, incomplete, outdated and misleading; and

(3) distorted the results of medical examinations conducted upon workers and/or individuals such as ~~Plaintiff~~ <u>Decedent</u> MARVIN WILLIAMS, <u>SR.,</u> who were using or in close proximity to Defendants' Products and being exposed to the inhalation of asbestos dust and fibers, by falsely stating and/or concealing the nature and extent of the harm to which ~~Plaintiff~~ <u>Decedent</u> and others such as ~~Plaintiff~~ <u>Decedent</u> have suffered.

(c) Other conspirators participating in the conspiracy, or in ongoing or subsequent conspiracies (hereinafter called the "conspirators"), were member companies in the Quebec Asbestos Mining Association, and/or Asbestos Textile Institute, and/or the Industrial Hygiene Foundation, and/or the Cosmetic Toiletry and Fragrance Association (now Personal Care Products Council). Acting in concert, the conspirators fraudulently misrepresented to

the public and public officials, *inter alia*, that asbestos did not cause cancer and that the disease asbestosis had no association with pleural and pulmonary cancer and affirmatively suppressed information concerning the carcinogenic and other adverse effects of asbestos exposure on the human respiratory and digestive systems.

(d) In addition, Defendants contrived, combined, confederated and conspired through a series of industry trade meetings and the creation of organizations such as the Air Hygiene Foundation (later the Industrial Hygiene Foundation) to establish authoritative standards for the control of industrial dusts which would act as a defense in personal injury lawsuits, despite knowing that compliance with such standards would not protect individuals such as ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., from contracting an asbestos-related disease or cancer.

(e) In furtherance of said conspiracies, Defendants and/or their co-conspirators contributed to cause the establishment of a Threshold Limit Value for asbestos exposure, and contributed to the maintenance of such Threshold Limit Value despite evidence that this supposed "safe" level of exposure to asbestos would not protect the health of individuals such as ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., even if complied with.

(f) As the direct and proximate result of the false and fraudulent representations, omissions and concealments set forth above, Defendants individually, jointly, and in conspiracy with each other intended to induce ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., and his family members to rely upon said false

and fraudulent representations, omissions and concealments, to continue to expose himself to the dangers inherent in the use of and exposure to Defendants' Products, which caused the release of respirable asbestos fibers.

35. ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. and his family members reasonably and in good faith relied upon the false and fraudulent representations, omissions and concealments made by Defendants regarding the nature of Defendants' Products.

36. As a direct and proximate result of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s and his family members' reliance on Defendants' false and fraudulent representations, omissions and concealments, ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., sustained damages including injuries, illnesses, ~~and~~ disabilities and death and was deprived of the opportunity of informed free choice in connection with the use of and exposure to Defendants' Products.

## VIII. GROSS NEGLIGENCE/MALICE ALLEGATIONS AGAINST ALL DEFENDANTS

37. All of the allegations contained in the previous paragraphs are realleged herein.

38. The actions and inactions of Defendants and their predecessors-in-interest, as specifically alleged hereinabove, whether taken separately or together, were of such a character as to constitute a pattern or practice of gross negligence, intentional wrongful conduct and/or malice resulting in damages and injuries to ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. Defendants' conduct was specifically intended by Defendants to cause substantial injury to ~~Plaintiff~~ Decedent, or was carried out by Defendants with a conscious and flagrant disregard for the rights, safety and welfare of others and with actual awareness on the part of Defendants that the conduct would, in reasonable probability, result in human deaths and/or great bodily harm. More specifically, Defendants and their predecessors-in-interest consciously and/or deliberately engaged in oppression,

fraud, willfulness, wantonness and/or malice with regard to ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., and should be held liable in punitive and exemplary damages to Plaintiffs.

## IX. AIDING AND ABETTING ALLEGATIONS AGAINST ALL DEFENDANTS

39. All of the allegations contained in the previous paragraphs are realleged herein.

40. The actions of all Defendants aided, abetted, encouraged, induced or directed the negligent and/or intentional acts of each and every other Defendant.

41. Each of the Defendants knew or should have known that its individual actions would combine to cause the injuries, illnesses and disabilities of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.

42. The actions of each of the Defendants is a proximate cause of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s injuries, illnesses,~~ and~~ disabilities and death. As a result, all Defendants are jointly liable for the damage caused by their combined actions.

## X. NEGLIGENCE PER SE ALLEGATIONS AGAINST ALL DEFENDANTS

43. All of the allegations contained in the previous paragraphs are realleged herein.

44. The actions of all Defendants also constituted negligence per-se.

45. Each Defendant violated federal and state regulations relating to asbestos exposure. Such violations constitute negligence per-se or negligence as a matter of law. Further, each such violation resulted in dangerous and unlawful exposures to asbestos for ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. ~~Plaintiffs are not making any claims under federal law; instead, Plaintiffs are simply using the violation of federal standards as proof of liability on their state-law theories. Further, the reference to Federal regulations does not create a Federal question. See *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986). Any removal on this basis will be met with an immediate motion for remand and for sanctions.~~

46.     The negligence per-se of each Defendant was a proximate cause of ~~Plaintiff MARVIN WILLIAMS's~~ Decedent's injuries, illnesses, ~~and~~ disabilities and death.

**XI.     FRAUD AGAINST DEFENDANTS AVON PRODUCTS, INC., BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), BRISTOL-MYERS SQUIBB COMPANY (sued individually and as successor-in-interest to CHARLES OF THE RITZ), JOHNSON & JOHNSON, JOHNSON & JOHNSON CONSUMER INC., a subsidiary of JOHNSON & JOHNSON, REVLON CONSUMER PRODUCTS CORPORATION, and WHITTAKER CLARK & DANIELS, INC.**

47.     All of the allegations contained in the previous paragraphs are realleged herein.

48.     **Fraudulent Misrepresentation**: All Defendants are liable for their fraudulent misrepresentations:

(a)     First, each of these Defendants, via its employees, agents, advertisements, or any other authorized person or document, represented that certain facts were true when they were not, and made material representations that were false. The specific identities of these employees, agents, advertisements, or any other authorized person or document are maintained in Defendants' records. Such records remain in the exclusive control of Defendants pursuant to Defendants' respective document-retention policies. While Plaintiffs do not currently know all of the specific advertisements, or the names of all of the employees, agents, or any other authorized person who made the representations, Plaintiffs will have access to this information once discovery has commenced and will be able to specifically name the advertisements as well as the employees, agents, or any other authorized persons.

(b)     Second, Defendants represented that the asbestos-containing and talcum powder products they manufactured, supplied, or specified for use were not

hazardous to humans. These representations, including material misrepresentations, were made before and during the years that Decedent MARVIN WILLIAMS, SR. and his family members purchased, used, and Decedent was exposed to asbestos from Defendants' asbestos-containing and talcum powder products. Such material representations were made either directly to Decedent and his family members or to a third party intending and reasonably expecting that the substance of those material representations would be repeated to Decedent and his family members.

(c)     Third, Defendants knew that the material representations were false when they made them, or they made the material representations recklessly and without regard for their truth.  Defendants material representations and conduct were false statements and material representations of fact.

(d)     Fourth, Defendants intended that Decedent MARVIN WILLIAMS, SR. and his family members and/or the same class of persons as Decedent and his family members rely and act on the material representations or their substance.

(e)     Fifth, Decedent MARVIN WILLIAMS, SR. and his family members acutally reasonably relied on Defendants' material and false representations or the substance of these material and false representations.

(f)     Sixth, Decedent MARVIN WILLIAMS, SR. developed mesothelioma.

(g)     Seventh, Decedent MARVIN WILLIAMS, SR.'s and his family members' justifiable reliance on those material representations was a substantial factor in causing Decedent's mesothelioma and the resulting damages thereto.

49.     **Conspiracy to Commit Fraudulent Misrepresentation**: Plaintiffs hereby incorporate by reference the allegations of Paragraph 50 of this Seventh Cause of Action as if fully stated herein. All Defendants are liable for their conspiracy to commit fraudulent material misrepresentation.

(a)     First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent material misrepresentation against Decedent MARVIN WILLIAMS, SR. and his family members, and/or the same class of persons as Decedent and his family members.

(b)     Second, Defendants agreed with their conspirators and intended that the false and fraudulent material misrepresentation, including material misrepresentations of fact, be committed.

(c)     Third, Decedent MARVIN WILLIAMS, SR. developed mesothelioma.

(d)     Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Decedent's mesothelioma and the resulting damages thereto.

50.     **Fraud by Nondisclosure**: All Defendants are liable for their fraud by nondisclosure.

(a)     First, each of these Defendants made affirmative statements that were so misleading (e.g. misleading "half-truths") that they gave rise to a fraud cause of action even in the absence of a specific relationship or transaction as between each Defendant and Decedent MARVIN WILLIAMS, SR.. Specifically, Defendants stated that their asbestos-containing products could

be used safely while concealing that they were in fact lethal because they contained and released asbestos fibers.

(b) Second, Defendants (i) had exclusive knowledge of material facts not known to Decedent MARVIN WILLIAMS, SR. and his family members (as set forth above), (ii) actively concealed those material facts from Decedent and his family members (iii) made partial material representations but also suppressed material facts, as set forth above, and (iv) made factual representations, but did not disclose facts which materially qualified those representations. Such nondisclosures included Defendants representing their asbestos-containing products as safe when used as intended and as fit for the particular purpose for which they were marketed, while not disclosing the material facts that these products contained asbestos that would become airborne during the intended and foreseeable use of the products, rendering them dangerous and unfit for their intended purpose.

(c) Third, each Defendant entered into a relationship and/or a transaction with Decedent MARVIN WILLIAMS, SR. and his family members sufficient to give rise to a duty to disclose. For example, Decedent and his family members used or otherwise encountered Defendants' Products that were purchased either directly from Defendants, Defendants' authorized dealers or suppliers, or any other entity upon which Defendants derived a direct monetary benefit directly from Decedent’s and his family members’ purchase and use of the products. As for another example, Defendants directly advertised their products to those in Texas, Pennsylvania, South Carolina,

Alaska, Delaware, and elsewhere as a symbol of freshness, cleanliness, and purity. Defendants advertised and marketed their products as being only the beacon of "freshness" and "comfort," eliminating friction on the skin, absorbing "excess wetness," helping keep skin feeling dry and comfortable, and "clinically proven gentle and mild." The Defendants compelled men and women through advertisements to dust themselves with the products to mask odors. Defendants derived direct monetary benefit from consumers' use of the products because Decedent and his family members decided to use or purchase Defendants' products.

(d)    Fourth, Decedent and his family members did not know of the concealed material facts.

(e)    Fifth, Defendants intended to deceive Decedent and his family members by concealing the material facts, and/or by making certain material representations without disclosing additional facts that would have materially qualified those representations.

(f)    Sixth, had the omitted information been disclosed, Decedent and his family members would have behaved differently.

(g)    Seventh, Decedent MARVIN WILLIAMS, SR. developed mesothelioma.

(h)    Eighth, each Defendant's concealment was a substantial factor in causing Decedent MARVIN WILLIAMS, SR.'s  mesothelioma and the resulting damages thereto.

51. **Conspiracy to Commit Fraud by Nondisclosure**: Plaintiffs hereby incorporate by reference the allegations of Paragraph 52 of this Seventh Cause of Action as if fully stated herein. All Defendants are liable for their conspiracy to commit fraud by nondisclosure.

(a) First, Defendants were aware that their conspirators, which included all co-Defendants and others, planned to commit fraudulent concealment against Decedent MARVIN WILLIAMS, SR. and his family members and/or the same class of persons as Decedent and his family members.

(b) Second, Defendants agreed with their conspirators and intended that the fraudulent concealment be committed.

(c) Third, Decedent MARVIN WILLIAMS, SR. developed mesothelioma.

(d) Fourth, each Defendant's participation in the conspiracy was a substantial factor in causing Decedent MARVIN WILLIAMS, SR.'s mesothelioma and the resulting damages thereto.

52. **Knowledge of Hazards**: At all times pertinent hereto, all Defendants owed Decedent MARVIN WILLIAMS, SR. a duty, as provided for in Restatement (Second) of Torts §525-551, to abstain from injuring his person, property, or rights. In violation of that duty, these Defendants, and each of them, did do the acts and omissions, when a duty to act was imposed, as set forth herein, thereby proximately causing injury to Decedent. Such acts and omissions consisted of acts falling within Restatement (Second) of Torts §525-551, and more specifically were (i) suggestions of material facts which were not true and which the Defendants did not believe to be true, (ii) assertions of material facts of that which were not true, which the Defendants had no reasonable ground for believing to be true, and (iii) the suppression of material facts when a duty existed to disclose them, all as are more fully set forth herein, and the violation of which as to any one such item gave rise to a

cause of action for violation of Plaintiffs' rights as provided for in the aforementioned Restatement (Second) of Torts §525-551.

53.     Since 1924, all of the Defendants have known and possessed of the true material facts (consisting of medical and scientific data and other knowledge) which clearly indicated that the asbestos-containing and talcum powder products referred to herein were and are hazardous to the health and safety of Decedent MARVIN WILLIAMS, SR. and others similarly situated.  Defendants engaged in the following acts and omissions:

(a)     Did not label any of the aforementioned asbestos-containing and talcum powder products as to the hazards of said products to the health and safety of Decedent MARVIN WILLIAMS, SR., and others in Decedent's and his family members positions using said products when the knowledge of such hazards was existing and known to Defendants, and each of them, since 1924. By not labeling Defendants' asbestos-containing and talcum powder products as to their said hazards, Defendants, and each of them, caused to be suggested as a fact to Decedent and his family members that it was safe for them to use said products, when in fact these things were not true and Defendants did not believe them to be true.

(b)     Suppressed information relating to the danger of using the asbestos-containing and talcum powder products by requesting the suppression of information to Decedent and his family members, Decedent's and his family members' class of persons, and the general public concerning the dangerous nature of the aforementioned products to all persons, including users, bystanders and household members, by not allowing such information to be

disseminated in a manner which would give general notice to the public and knowledge of the hazardous nature thereof when Defendants were bound to disclose such information.

(c)    Sold the aforementioned asbestos-containing and talcum powder products to the public, including Decedent MARVIN WILLIAMS, SR. and his family members, and others in Texas, Pennsylvania, South Carolina, Alaska, Delaware, and other states without advising them of the dangers of use of said products and to those persons' family members, when Defendants knew of such dangers as set forth herein and above, and had a duty to disclose such dangers. Thus, Defendants caused to be positively asserted to Decedent, his family members, and the public that which was not true and which Defendants had no reasonable ground for believing it to be true, in a manner not warranted by the information possessed by said Defendants, and each of them, of that which was and is not true, to wit, that it was safe for Decedent and his family members to use said products and that they did not pose a risk of harm.

(d)    Suppressed and continue to suppress from everyone, including Decedent MARVIN WILLIAMS, SR. and his family members medical, scientific data, and knowledge of the accurate results of studies including, but not limited to, Waldemar C. Dreesen of the United States Public Health Service's 1933 report to the National Safety Council, the results of a study conducted among tremolite, talc and slate workers. The study indicated that the talc was a hydrous calcium magnesium silicate, being 45% talc and 45% tremolite, and

the National Safety Council stated "The results of the study seemed to indicate a relationship between the amount of dust inhaled and the effect of this dust on the lungs of the workers." As early as 1934, the National Safety Council was publishing information stating that "a cause of severe pulmonary injury is asbestos, a silicéte of magnesium." In the September 1935 issue of National Safety News, an article entitled *No Halfway Measures in Dust Control* by Arthur S. Johnson reported lowered lung capacity resulting from "asbestosis" and "similar conditions" that developed "from exposure to excess of many mineral dusts relatively low in free silica content." The article further noted that claims for disabilities from workers who alleged exposure to "clay, talc, emery, and carborundum dusts" had "claims prosecuted successfully." The article concluded that "[i]n the absence of adequate diagnoses, occupational histories and a more satisfactory method of adjudicating claims than prosecution at common law, we must conclude that it is necessary to find a practical method for controlling all mineral dusts."

(e) Belonged to, participated in, and financially supported the Industrial Hygiene Foundation, Asbestos Information Association, the Asbestos Textile Institute (ATI), and other industry organizations, including the Cosmetic, Toiletry, and Fragrance Association (now known as the Personal Care Products Council), which actively promoted the suppression of information of danger to users of asbestos-containing and talcum powder products for and on behalf of Defendants, and each of them, thereby misleading Decedent MARVIN WILLIAMS, SR. and his family members to their prejudice through the

suggestions and deceptions set forth above in this cause of action. ATI's Dust Control Committee, which changed its name to the Air Hygiene Committee of ATI, was specifically enjoined to study the subject of dust control; discussions in such committee were held many times of (i) the dangers inherent in asbestos and the dangers which arise from the lack of control of dust and (ii) the suppression of such information from 1946 to a date unknown to Plaintiffs at this time.

(f)      Knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and asbestosis in 1930 with the study of mine and mill workers at the Thetford asbestos mines in Quebec, Canada, and the study of workers at Raybestos-Manhattan plants in Manheim and Charleston, South Carolina.. This information was disseminated through the ATI and other industry organizations to all other Defendants, and each of them herein. Between 1942 and 1950, Defendants, and each of them, knew and possessed medical and scientific information of the connection between inhalation of asbestos fibers and cancer, which information was disseminated through the ATI and other industry organizations to all other Defendants herein. Thereby, Defendants suggested as fact that which is not true and disseminated other facts likely to and did mislead Decedent and his family members for want of communication of true facts, which consisted of the previously described medical and scientific data and other knowledge by not giving Decedent and his family members the true facts concerning such knowledge of danger, when Defendants were bound to disclose it.

(g)     Failed to warn Decedent MARVIN WILLIAMS, SR., his family members, and others similarly situated regarding the nature of Defendants' asbestos-containing and talcum powder products. In 1968, a study presented at the American Industrial Hygiene Conference and published in the American Industrial Hygiene Association Journal concluded that "[all] of the 22 talcum products analyzed have a.. . fiber content. . . averaging 19%. The fibrous-material was predominantly talc but contained minor amounts of tremolite, anthophyllite, and chrysotile as these are often present in fibrous talc mineral deposits. Unknown significant amounts of such materials in products that may be used without precautions may create an unsuspected problem." [Cralley, L.J., et al.; *Fibrous and Mineral Content of Cosmetic Talcum Products*, 29 Ant Ind. Hyg. Assoc. J.350 (1968).] Defendants failed to warn Decedent, his family members, and others similarly situated that their asbestos-containing and talcum powder products are, among other things, dangerous when breathed and cause pathological effects without noticeable trauma, although Defendants possessed knowledge that such products were dangerous and a threat to the health of persons coming into contact therewith and under a duty to disclose it.

(h)     Concealed from Decedent, his family members, and others similarly situated the true nature of their exposure, the fact that Defendants knew that exposure to respirable asbestos meant that Decedent would inhale this asbestos, significantly increasing his risk of developing asbestosis, lung cancer, and mesothelioma; that Decedent had in fact been exposed to respirable asbestos;

that the materials to which Decedent was exposed would cause pathological effects in the human body without noticeable or perceptible trauma to warn him of injury; and Defendants engaged in these acts and omissions while under a duty to and bound to disclose this information.

(i)     Failed to provide information to the public at large and buyers, users and physicians of Decedent MARVIN WILLIAMS, SR. for the purpose of conducting physical examinations of anyone who came in contact with asbestos as to the true nature of the hazards of asbestos, in order for such physicians to diagnose and treat individuals coming into contact with asbestos, in that the materials to which Decedent had been exposed would cause pathological effects without noticeable trauma, even though Defendants were under a duty to supply such information and such failure was and is likely to mislead persons, including Decedent and his family members, as to the dangers and risk of harm to which they were exposed.

(j)     Affirmatively misrepresented that asbestos-containing and talcum powder products were safe to use and handle, when Defendants knew such statements were false when made, or made said false statements recklessly and without regard for whether the statements were true.

54.     Each of the foregoing acts, suggestions, assertions, and forbearances to act when a duty existed to act, the said Defendants and each of them, having such knowledge, knowing Decedent MARVIN WILLIAMS, SR. and his family members did not have such knowledge and Decedent would breathe such material innocently, was done falsely and fraudulently and with full

intent to induce Decedent to be in a dangerous environment and to cause him to remain unaware of the true facts, all in violation of Restatement (Second) of Torts §525-551.

## XII. BASIS FOR PUNITIVE DAMAGES

55. All of the allegations contained in the previous paragraphs are realleged herein.

56. **Malice, Oppression, and Fraud**: Plaintiffs hereby incorporate by reference the allegations of all causes of action as if fully stated herein. All Defendants are liable for punitive damages because they engaged in the conduct that caused Plaintiffs harm with malice, oppression, or fraud.

(a) First, Defendants committed malice in that they acted with intent to harm when they caused Decedent MARVIN WILLIAMS, SR.'s asbestos exposures, and because their conduct was despicable and was done with a willful and knowing disregard of the rights and safety of others.

(b) Second, these Defendants committed oppression in that their conduct was despicable and subjected DecedentMARVIN WILLIAMS, SR. to cruel and unjust hardship and knowingly disregarded his rights.

(c) Third, the Defendants committed fraud in that they intentionally and fraudulently concealed and misrepresented material facts and did so intending

to harm Decedent, or with reckless disregard for whether their fraud would harm Decedent.

57. These Defendants' conduct constituting malice, oppression, and fraud was committed by, authorized by, and adopted by one or more officers, directors, and managing agents within the corporate hierarchy of each Defendant, who acted on behalf of each Defendant.

58. As a direct and proximate result of such intentional conduct by Defendants, their "alternate entities", and each of them, Decedent MARVIN WILLIAMS, SR. sustained the injuries, illnesses, disabilities, and damages alleged herein.

## XIII. DAMAGES

59. The conduct of Defendants, as alleged hereinabove, was a direct, proximate and producing cause of the damages resulting from the asbestos-related disease and death of ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR., and of the following general and special damages including:

(a) Damages to punish Defendants for proximately causing ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s untimely injuries, illnesses,~~ and~~ diabilities and death;

(b) Physical pain and mental anguish sustained by ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. in the past;

~~(c) Physical pain and mental anguish that Plaintiff MARVIN WILLIAMS, in reasonable probability, will sustain in the future;~~

(c) The past disfigurement suffered by ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.;

~~(e) The future disfigurement that Plaintiff MARVIN WILLIAMS will, in reasonable probability, sustain in the future;~~

(d) The physical impairment sustained by ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. in the past;

~~(g) The physical impairment that Plaintiff MARVIN WILLIAMS will, in reasonably probability, sustain in the future;~~

~~(h) The medical expenses that Plaintiff MARVIN WILLIAMS will, in reasonable probability, sustain in the future;~~

(e) Medical expenses incurred by ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. in the past;

(f) ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR.'s lost earning capacity sustained in the past;

(g) Loss of household services sustained by Plaintiffs in the past;

(h) The loss of household services that, in reasonable probability, Plaintiffs will sustain in the future;

(i) The loss of consortium sustained by Plaintiffs in the past;

(j) The loss of consortium that, in reasonable probability, Plaintiffs will sustain in the future.

(k) Plaintiffs seek punitive and exemplary damages.

(l) Any and all other recoverable personal injury, survival, and/or wrongful death damages for Plaintiffs ~~and Plaintiffs' heirs~~.

60. By their acts and omissions described herein, Defendants intentionally, knowingly and/or recklessly caused serious bodily injury and death to ~~Plaintiff~~ Decedent MARVIN WILLIAMS, SR. within the meaning of Tex.Civ.Prac.& Rem. Code §41.008(c)(7) and Tex. Penal Code §22.04.

61. Plaintiffs filed suit within two (2) years of Defendants' wrongdoing, which Defendants had and continue to wrongfully conceal.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs demand judgment against the Defendants, and each of them, jointly and severally, for general damages, for their costs expended

herein, for interest on said judgment from the date this action accrued until paid, at the legal rate, and for such other and further relief, both at law and in equity, to which Plaintiffs may show themselves justly entitled.

**JURY DEMAND**

Plaintiffs demand that all issues of fact in this case be tried to a properly impaneled jury.

Respectfully submitted,

**SIMON GREENSTONE PANATIER, PC**

*/s/ Dana C. Simon*______________________

DANA C. SIMON
State Bar No. 24032191
1201 Elm Street, Suite 3400
Dallas, Texas 75270
214-276-7680 Telephone
214-276-7699 Facsimile
dsimon@sgptrial.com

**ATTORNEY FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March _, 2020, Plaintiffs served their First Amended Complaint and Jury Demand via ECF filing upon the below listed counsel of record in this matter.

*/s/Dana C. Simon*____________________
Dana C. Simon

**AVON PRODUCTS, INC.**
Brent Sedge
Tracy Wolf
Andrea Paschal
LEWIS BRISBOIS
2100 Ross Ave, Suite 2000
Dallas, TX 75201
P - 214-722-7130

F - 214-722-7111
Brent.Sedge@lewisbrisbois.com
tracy.wolf@lewisbrisbois.com
andrea.paschal@lewisbrisbois.com

**BRENNTAG SPECIALTIES, INC.**
**WHITTAKER CLARK & DANIELS, INC.**
Todd Ogden
MARSON MARVEL BRADLEY ANDERSON & TARDY
2001 Bryan Street, Suite 3050
Dallas, TX 75201
P - (214) 736-9608
F - (469) 206-5501
togden@maronmarvel.com

**BRISTOL-MYERS SQUIBB COMPANY**
**REVLON CONSUMER PRODUCTS CORPORATION**
Kimberly Soloman
HAWKINS PARNELL & YOUNG
1717 W 6th St., Ste. 240
Austin, TX 78703
P – 512-687-6900
F- 512-687-6990
ksoloman@hpylaw.com

**JOHNSON & JOHNSON**
**JOHNSON & JOHNSON CONSUMER INC.**
Cori Steinman
KING & SPALDING
500 W. 2nd St., Suite 1800
Austin, TX 78701
P - 512-457-2008
csteinmann@kslaw.com
Helenia Formosa
KING & SPALDING
1100 Louisiana, Ste 4000
Houston, TX 77002
P - 713-276-7441
F - 713-751-3290
hformoso@kslaw.com